and tell us who you are, who you represent, and how much time you'd like. Okay, and a couple minutes for rebuttal in that. Okay. Good morning, Your Honors. Assistant State's Attorney Christian Lopez for the people. We'll also be reserving about 15 minutes. Okay. All right, and Ms. Ware, whenever you're ready. Thank you. May it please the Court. Your Honors, this morning I'd like to address Arguments 1 and 3 for my briefs, but if this Court has any questions about Argument 2, I'd be more than happy to address those as well. This Court should reverse Mr. Beck's conviction for unlawful possession of a firearm by a street gang member because the State failed to prove that the Black Pistons engaged in a course or pattern of criminal activity, as defined by the STOP Act. In creating the unlawful possession of a firearm by a street gang member statute, the legislature adopted a very strict and specific, very detailed definition of street gang from the STOP Act. This definition requires the State to prove, among other things, that the alleged gang engaged in a course or pattern of criminal activity, which means that the State has to show that the gang committed two gang-related offenses after January 1, 1993, within five years of each other, one of those offenses being a felony. Okay, so we've got lots of cases where defendants argue that the admission of evidence of street gang activity is so prejudicial that it just shouldn't be in the record. And so now I hear you arguing that you really want this evidence of other crimes evidence that the Pistons have committed. Yes, I mean the State by... So you really want it? Well, the gang evidence was already going to be admitted. The State, by charging Mr. Beck with unlawful possession of a firearm by a gang member, automatically injected this gang evidence into the trial because this offense requires the State to prove that the defendant is a gang member. So a couple of additional pieces of evidence would not tip the scales here. Well, but he admits, I was blessed by the gang, and Officer Wiroba said this gang has a hierarchy, and to be blessed means that somebody higher up on the gang ladder blessed you in, and what more does the State need? Right, so there was evidence of a hierarchy, but the definition of a street gang is what requires the two offenses within five years of each other. So the State did put forth evidence related to the gang, but the State did not put forth evidence showing the course or pattern of criminal activity. That is an element of... What kind of specificity do you believe the statute requires? Right, so the statute explicitly requires, under the STOP Act, it requires the State to show that the gang committed two offenses... No, I understand that, but what kind of specificity? Do you need to have a date? I mean, in order to satisfy the statute... Specific dates, specific crimes, yes. You have to have two dates? Yes. Okay, and with regard to those two dates, you also need the activity of the gang. Correct, the crimes, because you need to be able to show that one is a felony. So I'll point this case to your decision in People v. Lozano, the gang expert testified that the 2-6 street gang used violence to control their territory since the 1970s, including murders, shootings, intimidation, and arson. And this court said that that's not enough. That general testimony that this gang has been doing these things since the 1970s is not enough, because the statute requires that they show that these offenses happened within a specific time frame. And so that case is just like this case. There was general testimony about the black gang. There was general testimony about the criminal activity of the Black Pistons. I believe the most specific testimony that was presented was by Officer Y. Roba in terms of the criminal activity of the Black Pistons. He testified that they controlled the drug and weapons trade on a particular area on the west side. That's very similar to the testimony in Lozano, which this court said was just not enough. But my point is, if there's no dates, you win, because the statute requires that you show that. So if there's no evidence, and there was no testimony with regard to any dates, was there? Correct. So do we need to look at anything more than that? You really don't. It's a failure of proof. I mean, that's one of the elements of the statute. You're absolutely right. And if there's no dates, no matter how many officers testify, unless they testify some dates, I mean, the statute's not going to be able to be followed. That is correct. So if Y. Roba had been tendered as an expert, you don't need dates, right? Because Murray says if the state presents a gang expert, that expert, like any other, can testify to the ultimate conclusion that this organization is a street gang without the detail that the statute requires. But, well, Lozano is a better reasoned decision. Lozano says that the court cannot just take the ultimate opinion from an expert saying that, you know, this gang is a gang, that the specific offenses and the specific dates need to be presented. And so Murray is wrong. Murray is wrong in the sense that the statute requires more than just an ultimate opinion that this is a gang. The statute requires very specific things, and the legislature intended that to put a very high burden on the state. And even if this court were to follow Murray, which I don't think it should, because we have a first district case that is right on point that is very similar to this case, but if this court were to follow Murray, Murray is distinguishable on three critical factors. In Murray, the gang expert testified that the Latin Kings were a street gang, and I quote, the gang was a street gang. As defined by Illinois law. So the expert in that case was aware of this specific definition of street gang when he testified that the Latin Kings were a street gang. In our case, none of the officers testified that they knew of, you know, the definition of what was required by law for the state to prove that the Black Keystones were a street gang. There was no evidence that they understood that when they testified. In Murray, the state presented an expert, expert on gangs. In our case, three officers testified, the state did not present any of them as a gang expert. And so if Murray stands for the assertion that an expert's testimony is sufficient to carry the day, in our case, we still don't have that. We just have three officers who gave their testimony. Again, you think we should not follow Murray, and you think that's bad law? Is that what you're saying? Yes, yes. And the reason that Murray is not as good as Lozano is? It's because Murray does not require that two specific offenses within five years of each other after January 1st, 1993, it doesn't hold the states to that burden of proof. Murray just says that an expert can say, hey, they're a gang, and that's enough. Lozano says differently. And the third way that this case is distinguishable from Murray is because in Murray there was more specific evidence presented by the gang expert on the criminal nature of the Latin kings than in this case. The appellate court in Murray, and I'm quoting from paragraph six, said that the expert detailed the criminal nature of the Latin kings in particular. And in our case, there was no such detail given about the criminal nature of them. Has one of the Black Pistons ever been found to be a street gang in any other case in Illinois? Is there a case that says, yep, they're a gang, a street gang? I'm not aware of any, and the state has not pointed us to any either. And even if there was, the state would still have to prove it in this case. I'm just curious to know whether or not they've been defined as a street gang in any existing case. I see. Since the beginning of the law, which is a long time. Yes. Well, I mean, as I said before, the state hasn't put forth that. But also, it wouldn't be proper for this court anyway to take judicial notice of a fact found in another case, for a case like this. Because here... I'm not suggesting that it would. I was just curious. Okay. Thank you. I didn't know if you were referring to Justice Gordon's dissent in Lozano. So lastly, as I said, the gang evidence was more detailed in Murray. So Murray is distinguishable. And I'd like to move on to Argument 3, unless there are more questions about Argument 1. I think you can. Thank you. Your Honor, the omission of a certified letter from the Illinois State Police alleging that Mr. Beck did not have a concealed and carry license or a firearm owner's identification card violated his constitutional right of confrontation. Mr. Beck was charged with several firearms possession offenses that required the state to prove that Mr. Beck lacked a FOIA card. Why would plain error apply here? Because the evidence was closely balanced on the issue of whether Mr. Beck lacked a FOIA card. The only evidence of that element of the offense was the state's improper certification. So we know that improper certification made a difference here. The defendant did not state on the record that he did not have a FOIA card, that he did not have a CCL. There was no other evidence on the record besides the improperly admitted evidence. But there was no objection to the evidence at any time or in the post-trial motions, is that right? Correct. There was no objection, but this Court should review it as plain error or as ineffective assistance of counsel. The state does not dispute that the evidence was closely balanced on this element. And the Supreme Court has also recognized that the right to confront witnesses is a substantial right. So under either prong of the plain error rule, this issue should be reviewed. And it sounds to me, this issue in particular, that we would be encouraging defense attorneys to say nothing when the state has a certification from the Illinois State Police that the defendant does not have a FOIA card or a concealed carry license. Just say nothing, and then on appeal you can say it's closely balanced and this violated my right of confrontation. It doesn't make a lot of sense to me to encourage that kind of non-action by lawyers. Right. I think what I would encourage is for the state to put forth proper evidence that the defendant will have the opportunity to speak. Is there any indication that had the defendant said anything, the state couldn't have said anything? Well, call the person signing the certification in if you want that. Right. There was no evidence that the, Tracy Boucher, I believe her name is, there's no evidence in the record that she was present or willing to testify or that the state would have brought her in or that they could have. Or that her testimony, if she would have, if counsel would have been able to cross-examine her, if her testimony would have been sufficient enough. And that's the error here is the loss of the opportunity to confront this evidence. And this one piece of evidence was critical because without that he couldn't have been convicted of the Class II unlawful possession of a firearm by a gang member and several of the ag UUWs because they all require, I believe about six of the counts that he was convicted of, require proof. So would it always be ineffective assistance if the lawyer said, yeah, I'll agree to that stipulation? Well, maybe not in a case like Cox that the state, that the state cites in its brief. The state argues that this case is similar to Cox. And Cox, the court asked the attorney three times if he objected to the admission of the certification. Three times counsel said, no, I'm not objecting. And so on Cox the court held that, okay, well we have, where we have an attorney affirmatively acquiescing to the admission of a certification, that's invited error. And then claim on appeal, hey, I confidential. Well, again, it sounds like we would be encouraging lawyers to do nothing because they're better off if they do nothing. I don't think so. I think that the interest here is in protecting the constitutional rights of the defendant to confront the witnesses at trial. And I believe, as I stated, that it would encourage the state perhaps to bring in a live witness to testify to this fact so that the defendant can, you know, confront this witness about this critical evidence that's being admitted. And, again, I think it's different, different from the Cox case where, I mean, the court is asking the attorney, you know, specifically, do you object? And in this case we don't have that. So, but, again, that could have been, that acquiescence by the attorney, it's not that he or she shouldn't have known about it. I mean, it was right there, sitting right there in court. Again, where's the harm? In that the lawyer was there, didn't say anything, let it in, and now you come before us and say, oh, should have said something. Yes, I mean, where's the harm in my case? Well, okay, if you look at Diggins, okay, and Diggins, this court found that the error was harmful, that it was prejudicial. And in that case, the defendant actually testified on cross that he didn't have a FOIA card. And the court said that that was still reversible error, that was still prejudicial, because the defendant may not have testified had that certification not been admitted. And so, I mean, the prejudice is clear.  Yes. Yeah, it was overruled. Correct. But I'm saying, when you think about prejudicial error here, you have evidence on the record that he doesn't have a FOIA card in Diggins, and the court still found it prejudicial. And in this case, there's nothing but the certification in terms of what evidence was present to prove this element is true. So, I'm just saying, if the defendant doesn't have any other questions, I ask this court to reverse Mr. Beck's unlawful possession of a firearm by a street gang conviction and remand for a new trial on the remaining charges. Thank you. Good morning again, Your Honors. Assistant State's Attorney Christian Lopez for the people. Your Honors, I'd like to turn your attention to Issue 1 first, and that's whether 720 ILCS 5-24-1.8, the unlawful possession of a firearm by a street gang member, I'm sorry, Your Honors, it's Issue 1, whether the defendant was proved guilty beyond a reasonable doubt of unlawful possession of a firearm by a street gang member. Specifically, Your Honors, whether the definitions of a street gang member raise the State's burden in proving the case. Well, isn't the definition in the Act pretty specific? It is, Your Honor, as well as in, it's similar to the Firearms Act, where they do outline several characteristics of what defines a street gang member as the issue or the elements that the State needs to prove in their case. I'd also like to mention, Your Honors, that this issue has been fully briefed and argued before the Illinois Supreme Court as of January 16, 2019. We do ask that Your Honors defer your consideration until a decision has been rendered. However, I can certainly respond to some of the arguments raised by opposing counsel. One of those was the distinction of this expert witness. Well, what's the case that you're raising that was argued in the Supreme Court? You're saying that's on all fours with this case? No, Your Honor, that's actually specific to Issue 1, the people of Murray. Right, people versus Murray, okay. Right, and so the one distinction that is raised is that Murray did involve an expert witness. However, I ask that out and people be aware that in the case of Terry, it is, and I quote, well settled that a witness, whether expert or lay, may provide an opinion on the ultimate issue in a case. And the distinction between Murray and the case that we have here, Your Honors, is that in Murray, the officer that testified wasn't actually at the scene or where the crime occurred and didn't see the facts that were alleged in that case. And what's different here is that it's distinguishable because the officers that testified all raised the issue of the fact that the witness, the defendant in this matter, Mr. Beck, possessed that firearm. In fact, these officers... Well, but that's irrelevant here. As far as the statute is concerned, what date was testified to is one of the acts within five years. Where's the date? Well, Your Honor... Is there any date testified to for a street gang having committed a crime? No, Your Honor. The testimony... No date? Correct. So how has the statute been satisfied then? Well, Your Honor, because we look at the testimony that was a due set trial and similar to what's been argued in people v. Murray, the definitions that are in the statute, it has to testify to another act. Where's the other act? Well, the other act, Your Honor, would be the fact that these officers are experienced gang members. Gang members? I'm sorry, gang officers, yes. My apologies. These are experienced gang officers that have been working that specific area and as well also have direct knowledge of the Black Pistons as well as the crimes committed. It would have been pretty easy for the state to ask Officer Wairoba, could you give the court an example of two incidents involving the Black Pistons, of which you are aware, after January 1, 1993, and involve the commission of a felony? Right, Your Honor. And then we get into a point where Your Honor raised earlier that introducing evidence, especially of other individuals, into the case in chief against the defendant, that surely raises some issue of evidence that's prejudicial to the defendant. I'm guessing most public defenders wouldn't want that evidence in under any circumstances, but it seems that the statute requires it. Well, that was our understanding too, Judge, in terms of just the prejudicialness of the evidence. And in terms of what the statute requires, in essence, it really goes back as to the intent of the legislature, the intent to prohibit individuals who are gang members and possessing a firearm. And in doing so, first establishing that this, that the, that they're participating in what is considered a gang, a street gang. And in doing so, allowing this evidence to simply be used as an evidence that's specific to dates and other crimes would be prejudicial to the defendant. So if it's prejudicial, I mean, nobody's raising the constitutionality of the statute. So, you know, the statute's constitutional. It says two or more gang-related criminal offenses. You say it doesn't mean that when it says that? You don't have to put on that evidence? The statute specifically says two or more. Yes, Justice, and I think that that ultimately goes to the statute's definition of just a pattern of criminal activity. That's not what it says. It says two or more. It doesn't say pattern. Right, Judge. My understanding is that that's under the definition of what it means to be a pattern of streaking activity. Okay. So you're saying that the definition isn't part of the element of the crime? Yes, Your Honor. Why is it there, then? I believe it's there, Judge, similar as to the firearm statute, is to provide instruction on what it means to be a member of a street gang and to testify as to their knowledge or understanding of membership in a street gang. Okay. But if that were true, then there should have been a witness that was testifying about the elements of the definition to put the whole package together, and no one did that. Right, Judge. And it would be our position that at that point, that would have raised the elements required to prove possession by a street gang member further than what is described by the statute pursuant to the definitions. I don't understand. If it says pattern, which it says, then two or more offenses equal pattern. And you're saying you don't have to show the two or more? I believe, Judge, or I'm sorry, Your Honor, that that can be seen in several ways. We do have testimony from Officer Riova indicating that he's made hundreds of gang-related arrests and that he does have experience in investigating the black p-stones of a street gang member. In doing so, we had testimony saying that he's investigating crimes such as homicides, aggravated batteries, narcotics and gun weapons-related crimes. That would certainly go to show a pattern. Did he specifically say this particular gang? Yes, he said that he's been involved in investigating the black p-stones. Investigating is one thing, but we're talking about gang-related criminal offenses. And they were committed within five years of each other. Right, Judge. And the record does indicate that Officer Riova, I believe it's on page... indicates that he testified to the control of the black p-stones, that they control from Kinsey to approximately Iowa, and that he's made several gang-related arrests in that specific area. And based on that, Judge, there would certainly be evidence to produce that there was a... that the state did satisfy their burden in proving that the defendant committed gang-related crimes. And that he was a member of a street gang. So you're saying an arrest is the same as a criminal offense? You said arrests. The statute says criminal offenses. For the purposes of the... Judge, I think I would see a similarity between arrests and criminal offenses. How's that? You used the word arrest. He used the word arrest. The statute says two or more gang-related criminal offenses in Illinois. It doesn't say anything about arrests. Arrests may not be an offense. You don't need an offense to conduct an arrest. Oh, so you don't mean if you're guilty or not, just that if you've been arrested, that's sufficient. Right. If you're a gang member and you're arrested twice, that's enough. The rest is enough. Right, to show gang activity. And more importantly on that, Your Honors, we also have that defendant in fact admitted himself that he was a gang member. He provided, and he talked about the gang hierarchy. Even further, the defendant himself testified that the sole reason that he possessed that firearm was because he feared that someone was coming to take his position in the same street. So not only do we have testimony in this case from experienced officers that focus on gang investigations, we also have the defendant's own statements indicating that he is involved in what's called the Black Pistons and that he does possess this firearm that he was ultimately convicted on because he wanted to ask protection. Unless Your Honors have any further questions on Issue 1, I'd like to address Issue 3. Your Honors, Issue 3 comes to whether the admission of the certification indicating that the defendant did not have a concealed carry license or a firearms owner identification card violated the defendant's constitutional right to confrontation where the defendant did not object. And as Your Honors know, the defendant's right of confrontation really means two things that the defendant has the option of. The defendant has the option of objecting or confronting out of courtesan law. The defendant has the option of either making testimonial statements or he can simply choose not to. In this case, the defendant chose not to exercise his right and he thus forfeited this issue on appeal. Does it make a difference in your view, as Ms. Ware argues, that in Cox the court asked the defendant three times, any objection, any objection, no. And here the certification was admitted, court didn't turn apparently as far as I know. As far as the transcript reflects to defense counsel and say, do you have any objection? Absolutely, Your Honor. So when, there would be a difference if there were a different set of facts. Perhaps if there was any indication in this record that the defendant did possess a FOIA or did possess a valid CCL license, that may lead, that may give rise to what defense counsel claims as a plain error. However, when counsel simply remains silent, that also takes the opportunity from the state to present their case in chief or to remedy these issues and call additional witnesses. We are in a position that had defense, or had the defense in this case objected, the state could have easily remedied this issue and called a representative from the Illinois State Police. In doing so, the state decided to enter this certification with no objection from the defense and only thus hearing it on appeal. So at that point the defendant forfeited this issue when the defense failed to object to the introduction of the evidence at the trial. However, defense brings up plain error and plain error really looks at the clear, whether it's clear and obvious. And counsel argues that the evidence was so close that it threatened to skip the scales of justice. However, we don't have that here, Your Honors. Again, there's no indication that this was plain error where the defense, where the attorney, the defense attorney failed to object when he should have. There's no indication in this record that the defendant did in fact possess the valid FOIA or the CCL. And in fact, this whole right of confrontation is really demonstrated in Melendez-Diaz where there was an objection. When the defendant, or the defense actually did say, I object. And even after that, the trial court admitted the evidence over their objection. That is an issue of confrontation. That is when confrontation really attaches to the defendant. However, failing to object and remaining silent and pursuing this on appeal is not an issue that is within the realm of the defendant's right to confrontation. So based on that, Your Honors, and for the reasons cited in our brief, we ask that you affirm the defendant's conviction and sentence. Thank you. Ms. Ware. Thank you. Just a couple of things. I don't think that this Court needs to hold this decision until the Supreme Court decides Murray. Because as I stated, this case is distinguishable from Murray. Has Murray been argued? Yes, it has. Yes. But this case is distinguishable from Murray because there was no expert, the expert had no knowledge of the statute, and because the testimony was detailed. So I believe this Court could follow Lozano and decide this case. Also, counsel speaks of the intent of the legislature in preventing gang members from carrying firearms when the legislature adopted this statute. But I'd also like to point the Court to the intent of the legislature when they adopted the word, the definition of a gang member from the STOP Act. During the debate on creating the UPF by gang member statute, the lawmakers stated their intent was to hold the state, and I quote, to a very, very high burden of proof on the gang elements. Senator Rutherford said there exists an extremely clear definition of a gang member, so it's not up to discretion. So the state's argument essentially short-circuits this very high burden that the legislature intended for the state to prove this gang member element, I'm sorry, street gang element. What about his testimony that he was a member of a street gang called the Black Pistons? He did not testify that he was a member of the Black Pistons. That evidence was disputed. The officer says that he told him that he was a member of a street gang, but at trial, defense counsel disputed that. That testimony that was not from the defendant. Do you agree that the statute's reference to criminal offenses means an arrest? Something more than an arrest, yes. It means something more than an arrest, because if you look at Lozano, in that case, the testimony was that the 2-6 used violence to control their territory, including murders, shootings, intimidation, and arson. So it was the actual offenses that were committed, and the court said that while that testimony was sufficient to show that there was one felony, it just didn't have the time frame that was necessary. And so we would need actual offenses, like, that we would be able to tell if it's a felony. So what if, what if Officer Weiroba was asked about these, the two offenses, and he says, yes, last week, I was in a street gang, and I was arrested. I saw Mr. Beck selling drugs on the corner of whatever, and two weeks before that, I saw him doing the same thing. So possession with intent to deliver, it's a felony under anybody's definition, wouldn't that be enough? Yeah, then we would have a different case, but we don't have that. Let's say he wasn't arrested, he wasn't charged, he's a gang crimes officer, and he's out in the neighborhood. And he says, I see this guy all the time, and he's out there selling drugs. Is that enough? Perhaps, perhaps. But here we don't even have that. We have way less than that here. We have just the general testimony that, you know, they're involved in criminal activity on the West Side. So I hope that does that answer your question. And also, counsel mentions that Weiroba's testimony about making hundreds of gang arrests and all this, all three officers testified that they made gang arrests. But none of them testified of any of this activity being specific to the Black P-Stones. They were talking about, in general, their experience with gangs. None of them talked about specific offenses with the Black P-Stones, other than what I mentioned in my opening about Weiroba's one statement, that they're involved in drug and weapons trade. And as to the last issue, the state mentioned that if the defendant had a four-year prison sentence, if there was evidence in the record that the defendant had a FOIA card or a concealed and carry license, that it would make a difference in this case. But the defendant has no burden to prove his lack of, I'm sorry, he has no burden to prove his possession. That's completely on the state. That's what Diggins says. So when we draw the reasonable inference from the fact that when the defendant saw the police, he ran, and as the police were chasing him, he discarded the gun, that he probably doesn't have a FOIA card. Well, that's still not going to be sufficient to prove that. No, no, no. I'm just talking, you're saying it's a closely balanced case. Right. And when you argue that on plain error, we view the evidence as we always do, and the like most favorable to the prosecution. So could a reasonable finder of facts say, I can infer from his conduct that he was not lawfully in possession of this weapon? No, I don't believe that would be a fair inference because, I mean, he could have, not all of the offenses that he was charged with required that he lacked a FOIA card or CCL. I mean, several of them did, but some of them didn't. And so we don't know why he ran. We don't know why people run all the time. Some people are just here to police. But he dropped the gun. The point is he dropped the gun. Right. That's what the officers testified. They found the gun and they waited until somebody else came in. Correct. But again, the case law says under Diggins that the state has to prove that he lacks a FOIA card. And in this case, there was no other evidence besides the improperly admitted certification. So we'd ask that this court would follow Diggins and find this case distinguishable from Cox. And if this court has no further questions, I'd ask for the release specified in my briefs. Thank you very much. Ms. Ware, Mr. Lopez, thank you for your arguments here this morning and your briefs. We will take the case under advisement.